UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LUZ POMPA,

*Petitioner*,

v. Case No. 3:26-cv-1958-JEP-SJH

WARDEN, BAKER CORRECTION INSTITUTION, et al.,

*Respondents*.
_______________________________/

**ORDER**

Through counsel, Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on July 30, 2026. (*See generally* Doc. 1). Petitioner argues, among other things, that her prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See id.* at 6–7). She asks the Court to order her release. (*Id.* at 7).

The Federal Respondents filed a response in opposition to the petition. (*See generally* Doc. 10). According to the Federal Respondents, although Petitioner has been detained for more than six months, there is a significant likelihood that she will be removed in the foreseeable future because "ICE has been actively seeking Petitioner's third-country removal to Mexico" but she has

"impeded removal by refusing to cooperate and leave her cell." (*Id.* at 4). Petitioner filed a reply arguing that the Federal Respondents "have not shown that [her] failure to leave her cell on one occasion amounted to a 'refus[al] to make timely application in good faith for travel or other documents necessary' for her removal or that her failure to leave her cell otherwise prevented her removal." (Doc. 11 at 2 (second alteration in original)). Further, she contends that the Federal Respondents have failed to establish that Mexico would accept her. (*Id.*). Upon review of the parties' filings, the Court finds that the petition must be denied.

**I.**

Petitioner, a citizen of Cuba, entered the United States over twenty years ago. (Doc. 1 at 3). An immigration judge ordered Petitioner removed on April 12, 2017. (*Id.* at 4). On July 12, 2017, ICE placed Petitioner on an order of supervision ("OSUP"). (Doc. 10-1 at 2). On January 22, 2026, ICE detained Petitioner. (*Id.* at 27). ICE subsequently revoked Petitioner's OSUP. (*Id.* at 2).

On August 31, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal:

> Petitioner's OSUP was revoked pursuant to 8 § C.F.R. 241.13(i) as there is a significant likelihood that she may be removed in the reasonably foreseeable future. . . .
>
> ICE intends to remove the petitioner to Mexico pursuant to INA § 241(b)(2)(E).

> On April 15, 2026, Petitioner was transferred from the Baker County Sheriff's Department to ERO El Paso Camp East Montana in Texas in preparation for removal to Mexico. On April 17, 2026, Petitioner refused to be removed to Mexico when she refused to exit her cell. ERO then returned Petitioner to Baker Couty Sheriff's Department. by April 25, 2026.
>
> ICE ERO intends to remove the Petitioner to Mexico. The Petitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.
>
> The Petitioner will receive a Notice of Removal to Mexico 24 hours prior to her transfer to the relevant field office.
>
> The receiving ERO field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the petitioner's upcoming removal to Mexico.
>
> Following INM's final acceptance, she will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.
>
> Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.
>
> Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.

(Doc. 10-1 at 2–4).

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)

("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day

removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

**III.**

Here, Petitioner was taken into ICE custody on January 22, 2026, and she filed this case on July 30, 2026—over six months after her re-detention. (*See* Doc. 10-1 at 27; *see generally* Doc. 1). Although Petitioner had been in ICE

custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "impeded removal by refusing to cooperate and leave her cell." (Doc. 10 at 4).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted

that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (unpublished but persuasive) ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) (unpublished but persuasive) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Here, on April 17, 2026—85 days after her detention began—Petitioner "refused to exit her cell" after she was transported to "ERO El Paso Camp East

Montana in Texas in preparation for removal to Mexico." (Doc. 10-1 at 2–3).[1] Such conduct will toll the six-month period. *See Vaz*, 634 F. App'x at 782 (concluding that a detainee's "refusal to voluntarily sign his travel document or inform Brazil that he is willing to return has extended his removal period beyond the 90 days following the issuance of his Final Administrative Order of Removal"); *see also Dominguez v. Warden, Fed. Det. Ctr. Mia.*, No. 26-cv-25853-RAR, 2026 WL 3121379, at *4 (S.D. Fla. Oct. 19, 2026) (concluding that the "Petitioner [had] thwarted his removal" by, in part, "refusing to depart his housing unit and comply with removal").

Furthermore, Petitioner's conduct also means that she cannot demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future. *See Oladokun*, 479 F. App'x at 896–97 (concluding that a petitioner's "non-cooperation [was] the only barrier to his removal" when he "created a commotion" on the airplane that was scheduled to transport him to another country and then "attempted to flee"); *see also Ramiro-Monteagudo v. Mordant*, No. 2:26-cv-873-SPC, 2026 WL 937971, at *1 (M.D. Fla. Apr. 7, 2026). If Petitioner cooperates with removal efforts at the border, her "removal is reasonably foreseeable; if [she] does not, the delay is entirely of [her] own

---

[1] Petitioner does not refute this allegation and argues in response only that Federal Respondents "have not shown that Petitioner's failure to leave her cell on one occasion amounted to refusal to make timely application in good faith for travel or other documents necessary for her removal or that her failure to leave her cell otherwise prevented her removal." (Doc. 11 at 2) (quotation omitted).

making." *Perez v. Warden, S. Fla. Det. Facility*, No. 2:26-cv-1631-KCD, 2026 WL 1703738, at *2 (M.D. Fla. June 12, 2026). Thus, her petition will be denied.

Accordingly, it is **ORDERED**:

1. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED WITHOUT PREJUDICE**.[2]
2. The Clerk is **DIRECTED** to enter judgment denying the petition without prejudice, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on November 2, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Counsel of Record

[2] Petitioner may re-file a new petition should she cooperate with any removal attempts and demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future.